UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID PAUL SHYIAK,

       Plaintiff,

v.

BUREAU OF CITIZENSHIP AND
IMMIGRATION SERVICES,

       Defendant.
_____/

File No. 2:04-CV-137

HON. ROBERT HOLMES BELL

**O P I N I O N**

This matter is before the Court on Plaintiff David Paul Shyiak's motion for summary judgment and Defendant Bureau of Citizenship and Immigration Services's ("BCIS") cross-motion for summary judgment. (Dkt. No. 29, Pl.'s Mot.; Dkt. No. 36, Def.'s Mot.) Both motions address whether Plaintiff abandoned his lawful permanent resident ("LPR") status when, at age ten, he left the United States and returned to Canada with his parents. For the reasons that follow, Plaintiff's motion for summary judgment will be denied and Defendant's cross-motion for summary judgment will be granted.

**I. Background**

Plaintiff was born in Canada on November 4, 1966. (Dkt. No. 28, Admin. R. 37.) On March 28, 1971, Plaintiff and his parents entered the United States as LPRs. (Admin. R. 4, 37, 42.) Plaintiff was four years old at the time of entry. (Admin. R. 4.) Plaintiff and

his parents returned to Canada in September of 1977, when Plaintiff was ten years old. (Admin. R. 4, 42-43.) Plaintiff and his parents returned to Canada because Plaintiff's father had accepted employment in Canada. (Admin. R. 4, 37.) The position Plaintiff's father accepted did not have a fixed end date. (Admin. R. 4.) Plaintiff's father testified that he never intended to abandon his LPR status, but he also acknowledged that he never again resided in the United States after returning to Canada in 1977. (Admin. R. 4, 43.) When Plaintiff's father was asked if he considers himself to be a lawful permanent resident, Plaintiff's father replied: "I would have to say no. I can't see how." (Admin. R. 43.) Plaintiff testified that since his mother returned to Canada in 1977, she has not returned to the United States to reside. (Admin. R. 4.)

Between 1977 and 1987, Plaintiff made brief, but frequent, visits to the United States. (Admin. R. 4, 38.) Plaintiff's family continued to own a house in Devil's Lake, North Dakota, until 1981 or 1982. (Admin. R. 4, 43.) However, the house in Devil's Lake was a rental property, not a residence for the Shyiak family. (Admin. R. 4.) Plaintiff returned to the United States in 1987 on a student visa to attend Northern Michigan University on a hockey scholarship. (Admin. R. 38.) Plaintiff then left the United States to play professional hockey in Europe. (Admin. R. 38.) Plaintiff played professional hockey in Europe for seven months and knew the length of his engagement at the time he departed the United States. (Admin. R. 38.) Plaintiff returned to the United States on a student visa to complete his degree and work as a student assistant hockey coach at Northern

2

Michigan University. (Admin. R. 39.) In August of 1993 Plaintiff accepted a position as a hockey coach in Kimberley, British Columbia, Canada. (Admin. R. 39.) In June of 1994 Plaintiff accepted a teaching position in Merritt, British Columbia, Canada. (Admin. R. 39.) In April of 1995 Plaintiff returned to the United States to work as a teacher and assistant hockey coach at Northern Michigan University. (Admin. R. 39.) Plaintiff entered the United States in April of 1995 on a visa issued pursuant to the NAFTA treaty. (Admin. R. 40.)

In 2001 or 2002, Plaintiff learned from his father that when the family entered the United States in 1971 they were granted LPR status. (Admin. R. 40, 43.) Plaintiff's father sent Plaintiff's LPR card to Plaintiff, who began using the LPR card to enter the United States. (Admin. R. 88.) On July 22, 2002, Plaintiff filed an application for naturalization with the Immigration and Naturalization Service, the predecessor agency to BCIS. (Admin. R. 19.) On November 4, 2002, Plaintiff was interviewed by a BCIS agent. (Admin. R. 85-89.) At the conclusion of the interview, BCIS indicated that Plaintiff's application for naturalization would be denied; however, Plaintiff did not receive a final decision from BCIS. (Admin. R. 19.) During the interview in November of 2002, Plaintiff declined to sign BCIS/INS form I-407 indicating that he had abandoned his LPR status. (Admin. R. 85, 87.) On June 24, 2004, Plaintiff filed the instant lawsuit because BCIS had not issued a determination on his application for naturalization within 120 days of the interview. On March 30, 2005, in accordance with a stipulation to remand entered by the parties, the Court

remanded this matter to the District Adjudication Office of BCIS for further administrative proceedings. (Dkt. No. 16, Order of Remand 1.) The Court's order remanding the case indicated that the Court would retain jurisdiction over this action. (Order of Remand 1.)

On June 17, 2005, a hearing was held on Plaintiff's application for naturalization. (Admin. R. 2, 16.) BCIS denied Plaintiff's application for naturalization on July 22, 2005. (Admin. R. 2-5.) The July 22, 2005, decision concluded that:

> It is the determination of the Service that you abandoned your status as a permanent resident when your parents abandoned their status while you were still a minor in their care and custody.
>
> Since the abandonment of your lawful permanent resident status, you have not taken any legal action to restore the status. In fact, since you abandoned your lawful permanent resident status, you have been given at least two different non-immigrant classifications in the United States.
>
> The applicant has the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization.
>
> You have failed to establish to the satisfaction of the Service that you are a lawful permanent resident of the United States and as such, your application must be, and is hereby, denied.

(Admin. R. 4-5.) Plaintiff filed a request under Section 336 of the Immigration and Nationality Act ("INA") for a review of the July 22, 2005, decision. On September 29, 2006, the review of the July 22, 2005, decision concluded:

> [Y]our status was abandoned when you returned to Canada, as a minor child, with your family in 1977. Since, your entries have been primarily for the purpose to visit, for pleasure or business; however, at no time since the 1977 departure have you or your family returned to resume residence, take employment, or pay taxes. In fact, as stated, you have had two non-immigrant classifications in the United States since 1977: as an F-1 student, and currently

under NAFTA. In addition, you have made multiple entries into the United States since becoming aware *you had been a resident*, declaring your eligibility for entry into the United States with the use of the TN visa.

Because you have failed to overcome the ground enumerated in the District Director's denial decision of July 22, 2005, that decision will be affirmed. In naturalization proceedings, the applicant bears the burden of establishing his/her application merits favorable consideration.

It is ordered that the denial decision of July 22, 2005, be affirmed.

(Admin. R. 1.) The parties then reinstated the case before the Court.

## II. Jurisdiction and Standard of Review

The Court originally had subject-matter jurisdiction over this matter under 8 U.S.C. § 1447(b)[1] because BCIS had not made a decision on Plaintiff's application for naturalization within 120 days of the interview that took place on November 2 or 4, 2002. After BCIS's September 29, 2006, decision affirming the denial of Plaintiff's application for naturalization the Court's subject-matter jurisdiction is based on Title 8, section 1421(c) of the United States Code, which provides, in relevant part:

A person whose application for naturalization under this subchapter is denied, after

---

[1] Title 8, section 1447(b) of the United States Code provides:

If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (1991).

> a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c) (1994). As indicated, though the parties have submitted their arguments as motions for summary judgment, the Court must conduct a de novo review of Plaintiff's application. Each party has provided a summary of the relevant facts. Plaintiff does not dispute the "substantive facts" recounted by Defendant. (Dkt. No. 38, Pl.'s Reply 2.) Furthermore, the Court notes that Plaintiff does not request a hearing before the Court in this matter because, according to the Plaintiff, there are no contested issues of fact. *Id.*

The only basis for denial of Plaintiff's application indicated by Defendant is that Plaintiff has allegedly abandoned his LPR status. Thus, that is the issue to be considered by the Court in this appeal.

### III.  Burden of Proof

LPR status is a prerequisite to naturalization. 8 U.S.C. § 1429 (1996) ("[N]o person shall be naturalized unless he has been lawfully admitted as a permanent resident."). Furthermore, the applicant for naturalization bears the burden of proof with respect to meeting the eligibility requirements for naturalization. *Id.* ("The burden of proof shall be on [the applicant] to show that he entered the United States lawfully"); 8 C.F.R. § 316.2(b) (1995) ("The applicant shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization, including that the

applicant was lawfully admitted as a permanent resident to the United States . . . .").

Plaintiff acknowledges that he bears the burden of proving the elements required for naturalization by a preponderance of evidence. (Dkt. No. 38, Pl.'s Reply 3-4.) However, Plaintiff contends that "[n]either the statute nor the regulations require a citizenship applicant to prove that he has *not* abandoned his lawful resident status." *Id.* Plaintiff argues that the government has the burden of proving that an alien abandoned his LPR status by "'clear, unequivocal, and convincing evidence.'" *See Hana v. Gonzales*, 400 F.3d 472, 475-76 (6th Cir. 2005) (quoting *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997)). In support of his argument that the government bears the burden of proof, Plaintiff cites to opinions decided in the context of exclusion or deportation proceedings. *See Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276 (1966) (deportation proceedings)*; Singh v. Reno*, 113 F.3d at 1512 (exclusion proceedings); *Hana*, 400 F.3d at 472 (exclusion proceedings); *Matter of Huang*, 19 I. & N. Dec. 749 (B.I.A. 1988) (exclusion proceedings). The Sixth Circuit has not specifically addressed whether the government bears the burden of abandonment of LPR status in the context of naturalization proceedings.

According to the Supreme Court, "'it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in *every* respect[.]'" *INS v. Pangilinan*, 486 U.S. 875, 886 (1988) (quoting *Berenyi v. District Director, INS*, 385 U.S. 630, 637 (1967)) (emphasis added). The Courts of Appeal have reiterated this statement of the burden without qualification or limitation. *Dicicco v. INS*, 873 F.2d 910, 915 & n.6 (6th

7

Cir. 1989); *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 554 (5th Cir. 2006); *see also United States v. Dailide*, 227 F.3d 385, 389 (6th Cir. 2000) (stating, in the context of an action to revoke citizenship, that while the government's evidence justifying revocation of citizenship must be "clear, unequivocal, and convincing," "the defendant bears a . . . heavy burden in establishing that he strictly complied with all the congressionally imposed prerequisites to the acquisition of citizenship . . . .") (citations omitted).

Courts have also stated that doubts in a naturalization application "should be resolved in favor of the United States." *United States v. Manzi*, 276 U.S. 463, 467 (1928); *see also Singh v. Gantner*, 503 F. Supp. 2d 592, 595 (E.D.N.Y. 2007) ("In stark contrast to deportation proceedings, in which the 'rule of lenity' dictates that ambiguities in deportation statutes be construed in favor of aliens, courts in naturalization proceedings 'generally construe ambiguities to the benefit of the government.'") (quoting *Puello v.BCIS*, 418 F. Supp. 2d 436, 438 (S.D.N.Y. 2005)).

As indicated by the Supreme Court, the interests of the parties in removal or denaturalization proceedings is different from those in naturalization proceedings:

> When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by "clear, unequivocal, and convincing evidence." But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot. He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship.

*Berenyi*, 385 U.S. at 637 (citations omitted). Similarly, the rationale for requiring the

government to show abandonment of LPR status by "clear, unequivocal, and convincing evidence" in removal proceedings is that "drastic deprivation may follow if a resident of the United States is compelled to forsake all bonds formed in this country and go to a foreign land where the resident often has no current ties."  *Huang*, 19 I. & N. Dec. at 754 (citing *Woodby*, 385 U.S. at 285).

In this case, Plaintiff seeks to obtain the rights of citizenship; the Court is not being asked to determine whether Plaintiff should be forced to depart the country.  Nor is the Court being asked to determine whether Plaintiff should be stripped of a right akin to citizenship; naturalization is a privilege, not a right. *United States v. Schwimmer*, 279 U.S. 644, 649 (1929), *overruled in part on other grounds by Girouard v. United States*, 328 U.S. 61, 66 (1946).  In short, the considerations in removal and denaturalization proceedings meriting a high burden of proof on the government are not present in a naturalization proceeding.

Plaintiff argues that being required to prove that he has not abandoned his LPR status adds an additional requirement to the statute.  However, LPR status is a prerequisite for naturalization under 8 U.S.C. § 1429.  Moreover, "lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant . . . *such status not having changed*." 8 U.S.C. § 1101(a)(20) (2006) (emphasis added).  Thus, Plaintiff's burden is to show that his LPR status is current and unchanged.  Defendant's argument, based on evidence in the

record, that Plaintiff previously abandoned his LPR status undercuts Plaintiff's claim that he is eligible for naturalization and is properly considered when determining whether Plaintiff has met his burden of proof with respect to eligibility.

Thus, in the context of naturalization proceedings, the applicant for naturalization bears the burden of proving that he has satisfied all of the eligibility requirements, including the requirement that he has been lawfully admitted for permanent residence and that such status has not changed. A showing by Defendant, based on evidence in the record, that Plaintiff has abandoned his LPR status does not improperly shift the burden of proof to Plaintiff or add a new element to the statutory eligibility requirements.

### IV. Abandonment of LPR Status

Plaintiff initially obtained LPR status through his parents while he was a minor. Plaintiff and his family left the United States to establish a residence in Canada in 1977 and he did not return to reside in the United States until 1987. Plaintiff returned to the United States for brief visits approximately once or twice a month to play hockey and to visit friends until 1987, when he returned to attend school. Defendant contends that Plaintiff's parents abandoned their LPR status when they moved to Canada in 1977, and that this abandonment is imputed to Plaintiff because it occurred while he was a minor in their custody and control.

LPR status may be abandoned through intentional or unintentional acts. *See United States v. Yakou*, 428 F.3d 241, 248 (D.C. Cir. 2005) (discussing case law regarding

abandonment). Plaintiff's father states that he never intended to abandon LPR status. (Admin. R. 43.) However, "an alien's desire to retain his status as a permanent resident, without more, is not sufficient; his actions must support his professed intent." *Singh*, 113 F.3d at 1515.

A departure from the United States may result in abandonment of LPR status unless it is a "temporary visit abroad," meaning "(a) it is for a relatively short period, fixed by some early event; or (b) the trip will terminate upon the occurrence of an event that has a reasonable possibility of occurring within a relatively short period of time." *Hana v. Gonzalez*, 400 F.3d 472, 476 (6th Cir. 2005) (quoting *Singh v. Reno*, 113 F.3d at 1514). "If the alien's trip abroad is not 'relatively short,' it is a 'temporary visit abroad' only if the alien has 'a continuous, uninterrupted intention to return to the United States during the entirety of his visit.'" *Singh v. Reno*, 113 F.3d at 1514 (quoting *Chavez-Ramirez v. INS*, 792 F.2d 932, 937 (9th Cir. 1986)).

Factors to consider regarding the alien's intent include "the alien's family ties, property holdings, and business affiliations within the United States." *Singh v. Reno*, 113 F.3d at 1514-15. When the court in *Singh* considered whether Singh had abandoned his LPR status, it noted that Singh had "few established connections to the United States, despite over two and a half years of legal permanent resident status . . . ." *Id.* at 1515. The court also noted that Singh "never established his own residence in the United States" and that he "spen[t] most of his time abroad." *Id.* Similarly, after 1977, when Plaintiff's family

11

moved to Canada, Plaintiff and his family retained few meaningful connections with the United States, and no residence in the United States, other than the rental property that was sold in 1981 or 1982.

In *Hana*, the Sixth Circuit considered whether Hana had abandoned her LPR status, noting that "during the four-and-a-half-year period in question Hana's permanent job, her real property, and her immediate family were all located in Iraq, and that she had never worked, paid taxes, or procured a bank account or driver's license in the United States." *Hana*, 400 F.3d at 477.  The court observed that "in many cases these factors would rightly counsel in favor of finding that an alien had abandoned her LPR status . . . ." *Id.*  Similarly, for approximately five years after 1981 or 1982, when Plaintiff's family sold their rental property in the United States, until 1987, when Plaintiff returned to the United States for school, it appears that neither Plaintiff nor Plaintiff's parents retained any real property, kept a permanent job, paid taxes, or retained any immediate family connections in the United States.  (Admin. R. 43-44.)

The Sixth Circuit instructs that, at least in the context of exclusion proceedings, a court should consider the "totality of the circumstances" in determining whether a party has abandoned LPR status.  *Hana*, 400 F.3d at 476.  In *Hana*, the Sixth Circuit determined that Hana did not abandon her LPR status during a four-and-a-half year absence when it considered the reasons for her absence from the country.  *Id.* at 477.  Hana left the United States and returned to Iraq to prepare her family for residence in the United States,

specifically to care for her mother-in-law and to prepare her family to "safely flee a brutal totalitarian regime." *Id.* Thus, Hana's intent to return was "fixed by some early event–the safe emigration of her family from Iraq." *Id.* In contrast, Plaintiff points to no circumstances explaining his family's long absence from the United States, and nothing in the record points to any relatively short, fixed event that would have resulted in their return to resume residence in the United States. Indeed, since departing the United States in 1977, it appears that neither Plaintiff's father nor mother has resumed residence in the United States. (Admin. R. 41.)

While Plaintiff's father made regular visits to the United States between 1977 and 1987 to maintain their rental home, to visit friends, and participate in hockey, these visits are not sufficient support for Plaintiff's contention that Plaintiff and his family retained LPR status, particularly in light of Plaintiff's and his family's overall lack of family ties, property holdings, and business affiliations in the United States during that period. *See Yakou*, 428 F.3d at 251 (determining that, where the immigrant returned to the United States nine times over eleven years to visit family, such "infrequent and short stays in the United States are insufficient as a matter of law to support retention of [immigrant's] LPR status"); *Matter of Kane*, 15 I. & N. Dec. 258, 265 (B.I.A. 1975) (finding abandonment of LPR status where the immigrant's returns to the United States were "brief and technical interruptions of an absence which has continued in essence since her departure" and where "[n]either

[immigrant's] business nor residence ties are in the United States.").² *Cf. Saxbe v. Bustos*, 419 U.S. 65, 72 (1974) (finding LPR status not abandoned by individuals that reside in Canada but commute regularly to work in the United States).

Plaintiff argues that the relevant circumstances that should be considered are his young age at the time of his departure, the fact that he was unaware of his LPR status, and that his departure in 1977 under the custody of his parents was involuntary. Plaintiff's argument is that a minor child cannot have the requisite intent to abandon LPR status; however, that is the basis for the rule that the intent of the child is imputed from his parents. *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989) ("Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents."); *In re Escobar*, 24 I. & N. Dec. 231, 234 n.4 (B.I.A. 2007) ("The imputation of a decision to abandon permanent resident status from a parent to a child is consistent with the above-mentioned longstanding policy that a child cannot form the intent necessary to establish his or her own domicile."); *Matter of Zamora*, 17 I. & N. Dec. 395, 397 (B.I.A. 1980) ("To the extent that *Bauer* holds that an alien can escape

---

² In *Kane*, the Board also noted that:

[Kane] has no job in the United States. Her husband resides in the United States but she separated from him and moved to Florida prior to her 1967 departure. She appears to have a sister in the United States, but there is no showing that she makes her home with her sister. During each of her annual trips to the United States, she has rented accommodations on a temporary basis in a rooming house in Florida.

*Kane*, 15 I. & N. Dec. at 265.

14

the consequences of an 'entry' upon returning from such a long absence simply because he departed under the custody and control of his parents, it is hereby overruled."). Thus, during the period in which Plaintiff was a minor under the custody and control of his parents, the relevant inquiry is the intent of Plaintiff's parents, and there is no indication in the record that the departure of Plaintiff's parents to Canada in 1977, or their continued residence in Canada, was involuntary or that there were circumstances preventing their return to the United States.

Finally, Plaintiff contends that the rule imputing abandonment of LPR status from parents to minor children in their custody and control should not be followed by this Court because it is unreasonable.

This Court must defer to the BIA's reasonable interpretations of the INA.[3] *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005). The Sixth Circuit has not directly considered whether imputation of abandonment of LPR status is unreasonable, but Plaintiff cannot point to any opinion from any court that has so held. The doctrine of imputation of abandonment of LPR status is based on longstanding Board of Immigration Appeals ("BIA") precedent. *See, e.g., Matter of Winkens*, 15 I. & N. Dec. 451 (B.I.A. 1975); *Matter of Favella*, 16 I. & N. Dec. 753 (B.I.A. 1979); *Zamora*, 17 I. & N. Dec. at 395. While the Sixth Circuit has not expressly approved the imputation of abandonment of LPR status, Courts of Appeal in other Circuits have done so. *E.g., Nikoi v. Att'y Gen. of the U.S.*, 939 F.2d 1065, 1070 (D.C. Cir.

---

[3]The INA includes the statutory requirements for naturalization that are relevant for this case, 8 U.S.C. §§ 1421-1429.

1991) (distinguishing loss of the *rights* accompanying citizenship, from abandonment of the *privilege* of LPR status); *Amir-Moezi v. Ashcroft*, 107 Fed. Appx. 880, 882 (10th Cir. 2004) (unpublished opinion); *Guardia v. INS*, 21 Fed. Appx. 620, 621 (9th Cir. 2001) (unpublished opinion).

Courts have found imputation from a parent to a child to be unreasonable in certain circumstances, such as where the imputation involves unlawful conduct. In *Singh v. Gonzales*, 451 F.3d 400 (6th Cir. 2006), the Sixth Circuit determined that it was unreasonable for the BIA to impute fraudulent conduct from a parent to a child. *Id.* at 409. The court also noted that "not even a parent's *negligence* is typically imputed to a minor child." *Id.* at 407. However, the court specifically distinguished the finding of imputation of abandonment of LPR status by the BIA in *Zamora*, noting that "imputing the intent to engage in a perfectly lawful act–such as leaving the United States to return to one's native country–is far different from imputing the intent to commit fraud." *Id.* at 406. Thus, this Court is not persuaded that imputation of abandonment of LPR status is an unreasonable interpretation of the INA.

## V. Conclusion

For the foregoing reasons, the Court finds that, in light of the evidence indicating that Plaintiff has abandoned the LPR status that he obtained from his parents, Plaintiff has not met his burden of proof to show that he meets all of the eligibility requirements for naturalization under 8 U.S.C. §§ 1427, 1429. The Court notes that its decision is limited to

the issue before it, *i.e.* whether or not Plaintiff has satisfied the eligibility requirements for naturalization. The Court's finding that Plaintiff has not satisfied his burden of proof with respect to proving lawful permanent resident status is not a determination that Plaintiff is removable or excludable in a proceeding where Defendant bears the burden of proof. *See Matter of Abdelhadi*, 15 I. & N. Dec. 383, 384 (B.I.A. 1975) ("[Our ruling denying a visa petition for failure to prove LPR status] is not an adjudication that the petitioner is either excludable or deportable in a proceeding in which the Service bears the burden of proof, and will not act as an estoppel in any such proceeding."). The Court also notes that this decision does not prevent Plaintiff from re-applying for naturalization if his circumstances change. An order consistent with this opinion will be entered.


DATED:   September 25, 2008             /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE